**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

R#e'D BY_____M#_____ D.C.

I MAY - 5 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

FOX CORPORATION; FOX MEDIA LLC;
and FOX SPORTS EN ESPAÑO LLC,

                Plaintiffs,

   -against-

MEDIA DEPORTES MEXICO, S. de R.L. de
C.V.,

                Defendant.

MISC. CASE NO.:

**NOTICE OF FILING MISCELLANEOUS ACTION
FOR REGISTRATION OF APPOINTMENT OF
RECEIVER PURSUANT TO 28 U.S.C. § 754**

On August 14, 2025, Fox Corporation and Fox Media LLC (collectively, the "Plaintiffs") filed a complaint in the United States District Court for the Southern District of New York (the "New York Court") against Media Deportes Mexico, S. de R.L. de C.V. ("MDM"). *See* Exhibit A.

On August 14, 2025, Plaintiffs moved for a temporary injunction against MDM and Mexico Sports Distribution, LLC ("MSD"), which the New York Court granted on August 14, 2025. The Court subsequently issued a preliminary injunction against MDM and MSD on September 5, 2025. *See* Exhibit B.

Due to MDM's and MSD's noncompliance with the New York Court's orders, Plaintiffs filed motions for sanctions and for civil contempt, which the Court granted on August 29, 2025. *See* Exhibit C.

On April 24, 2026, in light of MSD's continued noncompliance with the Court's injunction and contempt orders, the Court granted Plaintiffs' sanctions motion and appointed Mr. Robert Seiden as receiver over MSD (the "Receiver"). *See* Exhibit D.

1

Pursuant to Federal Rule of Civil Procedure 66, 28 U.S.C. § 754, and the applicable local rules, the Receiver, Robert W. Seiden, hereby files the attached documents, attached hereto as Exhibits A through D, originally filed in the Southern District of New York, in the matter titled *Fox Corporation, et al., v. Media Deportes Mexico, S. de R.L. de C.V.*, Case No. 1:25-cv-06703-JSR (S.D.N.Y.):

- Complaint

- Temporary Injunction and Preliminary Injunction Orders

- Order finding MSD in Civil Contempt

- Order Appointing Receiver

The Receiver is in the process of hiring and seeking approval of the Hon. Judge Rakoff in the Southern District of New York, and local counsel in Florida will promptly appear on the Receiver's behalf in this matter.

Dated: May 4, 2026

Respectfully Submitted,

By: _____

Robert W. Seiden
322 Eighth Avenue, Suite 1200
New York, New York 10001
rseiden@seidenlaw.com
(212) 523-0686

*Court-Appointed Receiver*

2

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOX CORPORATION; FOX MEDIA LLC; FOX SPORTS EN ESPAÑOL LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MEDIA DEPORTES MEXICO, S. de R.L. de C.V., <br><br> Defendant. | Civil Action No. 1:25-cv-06703 <br><br> **JURY TRIAL DEMANDED** <br><br> **COMPLAINT** |

Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC (collectively, "Fox"), for their complaint against Defendant Media Deportes Mexico, S. de R.L. de C.V. ("MDM"), allege as follows:

### NATURE OF THE CASE

1. MDM is misappropriating Plaintiffs' intellectual property, pursuing litigation before a foreign tribunal in breach of an exclusive jurisdiction clause, misleading that tribunal in ex parte proceedings, and weaponizing the fruit of that bad-faith litigation to interfere with Fox's business relationships.

2. MDM used to hold a non-exclusive license to use Fox Sports trademarks in Mexico.

3. Fox terminated MDM's non-exclusive license because of the severe damage that MDM caused to the reputation and goodwill associated with the Fox Sports trademarks.

4. MDM has nevertheless continued to use the Fox Sports trademarks without authorization or legal right.

3024535

5.    The agreement that granted MDM a non-exclusive license to the Fox Sports trademarks was subject to an exclusive forum selection clause, which required all disputes relating to the license to be brought in New York.

6.    MDM has breached that forum selection clause.  MDM has sought and obtained a bad-faith, no-notice injunction in a Mexican court premised on the false claim that MDM has an *exclusive* license to the Fox Sports marks.  MDM has used that no-notice injunction to prevent Fox and its business partners from using the Fox Sports marks in Mexico.

7.    MDM has weaponized this bad-faith injunction, including by causing officials from the Mexican Trademark Office to raid and shut down the production facilities of one of Fox's business partners, MediaPro, which produces Fox content for distribution in the United States.

8.    MDM's actions are intended to disrupt and interfere with Fox's third-party business partners in an effort to undermine Fox's ability to compete against it.  That bad faith was on full display in the MediaPro raid, as MediaPro produces content for Fox using marks that are entirely distinct from the Fox Sports marks to which MDM claims to have rights.  As a result, MDM has interfered with Fox's rights over its Mexico-registered and U.S.-registered trademarks.

9.    MDM has injected its unauthorized use of the Fox Sports marks into the United States as well, despite having a (now-terminated) license expressly limiting the use of the Fox Sports marks to Mexico.

10.    Fox files this lawsuit to litigate this dispute in the forum that MDM is contractually-bound to litigate in.  Fox seeks to recover the damage caused by MDM's harm to its trademarks in Mexico, MDM's interference with Fox's relationships with its business

partners, and MDM's unlawful use of Fox Sports trademarks in the United States. Fox also seeks injunctive relief to prevent further, imminent injuries by MDM.

## PARTIES

11.    Plaintiff Fox Corporation is incorporated in Delaware and maintains its principal place of business in New York, and therefore pursuant to 28 U.S.C. § 1332(c)(1) is a citizen of Delaware and New York.

12.    Plaintiff Fox Media LLC is a limited liability company whose sole member is Foxcorp Holdings LLC, a Delaware limited liability company. Foxcorp Holdings sole member is Fox Corporation. Fox Media is therefore a citizen of Delaware and New York. Plaintiff Fox Media LLC registered the Fox Sports marks in Mexico and the United States.

13.    Plaintiff Fox Sports en Español LLC is a limited liability company whose sole member is Fox Sports Holdings, LLC, a Delaware limited liability company. Fox Sports Holdings' sole member is Foxcorp Holdings LLC, a Delaware limited liability company. Foxcorp Holdings' sole member is Fox Corporation, a Delaware corporation. Fox Sports en Español LLC is therefore a citizen of Delaware and New York.

14.    Defendant Media Deportes Mexico, sociedad de responsabilidad limitada de capital variable, is an entity formed under the laws of Mexico that can own property, make contracts, transact business, and litigate in its own name, and is recognized as a judicial person under the laws of Mexico. On information and belief, Defendant Media Deportes Mexico is a subsidiary of Altener S.A. de C.V., a foreign entity formed in Mexico. Defendant Media Deportes Mexico is a citizen of Mexico.

## JURISDICTION & VENUE

15.    The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC are United States citizens, and

MDM is a citizen of Mexico, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

16.    Additionally, the Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because this action arises under the Lanham Act 15 U.S.C. § 1051, *et seq.*

17.    Additionally, the Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Fox's breach of contract and tortious interference claims because those claims are so related to the Lanham Act trademark infringement claim over which this Court has original jurisdiction that they form part of the same case or controversy.  Specifically, all claims asserted by Fox involve MDM's unauthorized use of the same Fox Sports trademarks.

18.    This Court has personal jurisdiction over MDM and venue is proper in this Court because MDM "irrevocably consent[ed] to the exclusive jurisdiction, forum and venue of the . . . United States District Court for the Southern District of New York over any and all claims, disputes, controversies, or disagreements between [them] under or related" to the agreement by which MDM claims the right to use the trademarks at issue in this litigation.

## FACTUAL ALLEGATIONS

**A.    The Fox Sports Trademarks are Registered with Authorities in the United States and Mexico.**

19.    This case involves trademarks that have been registered both in the United States and Mexico.

20.    Fox Corporation, through its subsidiary Fox Media LLC, is the owner of several registered trademarks with various depictions of the words "Fox Sports."

21.    In 1994, Twentieth Century Fox Film Corporation ("21CFFC"), the predecessor to Twenty-First Century Fox, Inc., ("21CF") filed an application for a trademark—a standard character mark without claim to any particular font style, size, or color—to "Fox Sports."  In

3024535

4

1995, the United States Patent and Trademark Office granted the registration with a serial number of 74486901. The mark applies to television and cable television broadcasting services, and is classified as Class 038. In 2001, 21CFFC file its affidavit of continuous use and incontestability under sections 8 and 15 of the Lanham Trademark Act.

22.     In 1994, 21CFFC filed another application for a standard character trademark to "Fox Sports," but for entertainment services in the nature of production and distribution of television programs and under Class 041. In 1997, the United States Patent and Trademark Office granted the registration with a serial number of 74802818. In 2003, 21CFFC filed its affidavit of continuous use and incontestability under sections 8 and 15 of the Lanham Trademark Act.

23.     In 1998, 21CFFC filed another application for a standard character trademark to "Fox Sports" providing on-line information in the field of sports via global communications network and under Class 041. In 1999, the United States Patent and Trademark Office granted the registration with a serial number of 75524006. In 2005, 21CFFC file its affidavit of continuous use and incontestability under sections 8 and 15 of the Lanham Trademark Act.

24.     In 2004, 21CFFC filed an application for a trademark to "Fox Sports," a particular illustration with Fox Sports surrounded by a stylized oval was filed for television transmission services under Class 038. In 2005, the United States Patent and Trademark Office granted the registration with a serial number of 78488856. The mark is as follows:



In 2005, 21CFFC file its affidavit of continuous use and incontestability under sections 8 and 15 of the Lanham Trademark Act.

25.     In 2004, 21CFFC filed another application for a trademark for the same mark but for entertainment services in the nature of television programming; providing on-line information in the field of sports via the Internet under Class 041.  In 2005, the United States Patent and Trademark Office granted the registration with a serial number of 78488865.  In 2011, 21CFFC file its affidavit of continuous use and incontestability under sections 8 and 15 of the Lanham Trademark Act.

26.     Certain Fox Sports trademarks (the "Fox Sports Trademarks") were also filed and registered in Mexico by Fox as described below:

| Mark Name | Mark Image | International Classes | Country | Status | App. No. | Registration Number |
|---|---|---|---|---|---|---|
| AGENDA FOX SPORTS | | 41 | Mexico | Registered | 749 | 652939 |
| CRONOS FOX SPORTS | | 41 | Mexico | Registered | 1416030 | 1444124 |
| COPA FOX SPORTS KIDS | | 9 | Mexico | Registered | 1350427 | 1690012 |
| COPA FOX SPORTS KIDS | | 38 | Mexico | Registered | 1350428 | 1690013 |
| COPA FOX SPORTS KIDS | | 41 | Mexico | Registered | 1350430 | 1690014 |
| | | 41 | Mexico | Registered | 1486645 | 1784340 |
| | | 41 | Mexico | Registered | 694259 | 867973 |
| | | 16 | Mexico | Registered | 753483 | 915336 |
| FOX SPORTS | | 41 | Mexico | Registered | 265869 | 636283 |
| | | 38 | Mexico | Registered | 265870 | 636282 |
| | | 9 | Mexico | Registered | 1515691 | 1525583 |
| | (FOX) | 38 | Mexico | Registered | 1306552 | 1339943 |
| | (FOX) | 41 | Mexico | Registered | 1306549 | 1339940 |
| | (FOX) | 25 | Mexico | Registered | 1610073 | 1600775 |
| FOX SPORTS + (Banner) | FOXSPORTS+ | 41 | Mexico | Registered | 1035022 | 1332846 |
| FOX SPORTS + (Banner) | FOXSPORTS+ | 38 | Mexico | Registered | 1035022 | 1339645 |
| | | 38 | Mexico | Registered | 1299036 | 1338102 |
| | | 41 | Mexico | Registered | 1299037 | 1336234 |
| | (FOX) | 38 | Mexico | Registered | 1306550 | 1339943 |

3024535

7

| Mark | | No. | Country | Status | Reg. No. | Reg. No. |
|---|---|---|---|---|---|---|
| FOX SPORTS 2 | | 4. | Mexico | Registered | *illegible* | *illegible* |
| FOX SPORTS 3 | | 38 | Mexico | Registered | *illegible* | *illegible* |
| FOX SPORTS 3 | | 43 | Mexico | Registered | *illegible* | *illegible* |
| FOX SPORTS | | 38 | Mexico | Registered | *illegible* | *illegible* |
| FOX SPORTS | | 43 | Mexico | Registered | *illegible* | *illegible* |
| FOX SPORTS CANTERA | | 43 | Mexico | Registered | *illegible* | *illegible* |
| FOX SPORTS PLAY | | 9 | Mexico | Registered | *illegible* | *illegible* |
| FOX SPORTS PLAY | | 38 | Mexico | Registered | *illegible* | *illegible* |
| FOX SPORTS PLAY | | 41 | Mexico | Registered | *illegible* | *illegible* |
| FOX SPORTS PLAY | | 42 | Mexico | Registered | *illegible* | *illegible* |
| *illegible* | | 38 | Mexico | Registered | *illegible* | *illegible* |
| *illegible* | | 41 | Mexico | Registered | *illegible* | *illegible* |
| *illegible* | | 43 | Mexico | Registered | *illegible* | *illegible* |
| FOX PLAY | | 9 | Mexico | Registered | 1282827 | 1319645 |
| FOX PLAY | | 38 | Mexico | Registered | 1282829 | 1319646 |
| FOX PLAY | | 43 | Mexico | Registered | 1282831 | 1320075 |
| FOX PLAY | | 42 | Mexico | Registered | 1282832 | 1320537 |

### B.     MDM Obtains a Non-Exclusive License to Use Fox's Mexico-Registered Marks in Mexico.

27.     In 2017, The Walt Disney Company announced that it would acquire 21CF. That acquisition was completed on March 20, 2019. The day prior, on March 19, 2019, certain of 21CF's assets were spun off into a new company called Fox Corporation. The Fox Sports Trademarks were among those assets that were excluded from the acquisition deal. On March 19, 2019, Fox Corporation—the then-owner of the Fox Sports Trademarks—granted 21CF a non-exclusive license to use the Fox Sports Trademarks (the "Fox-21CF License Agreement").

3024535                                                   8

Fox Corporation continues to own the Fox Sports Trademarks through its subsidiary Fox Media LLC.

28.    On November 10, 2021, 21CF assigned that non-exclusive license to use the Fox Sports Trademarks in Mexico to MDM.  Pursuant to that assignment, MDM or its agents or affiliates began using the Fox Sports Trademarks to broadcast sports in Mexico under the brand "Fox Sports Mexico."

29.    On July 25, 2022, 21CF and MDM entered into an Amended and Restated License Assignment Agreement, which amended and restated the Assignment but did not alter the non-exclusive nature or geographic scope of the license to use the Fox Sports Trademarks.

30.    The November 2021 and the July 2022 License Assignment Agreement between 21CF and MDM shall be collectively referred to as the "21CF-MDM Assignment Agreement."

31.    The 21CF-MDM Assignment Agreement expressly incorporated the obligations and limitations over the Fox Sports Trademarks that were included in the Fox-21CF License Agreement.  The 21CF-MDM Assignment Agreement attached a redacted copy of the Fox-21CF License Agreement and expressly stated that MDM adopted all obligations under the Fox-21CF License Agreement that were not redacted:

> This Amended and Restated License Assignment Agreement (the "Agreement"), dated as of July 25, 2022 (the "Execution Date"), is by and between **Media Deportes Mexico, S. de R.L. de C.V**, a *sociedad de responsabilidad limitada de capital variable* (limited liability company) organized under the laws of Mexico ("**Mexico Newco**"), and TFCF Corporation (f/k/a Twenty-First Century Fox, Inc.), a Delaware corporation ("**Assignor**" and, together with Mexico Newco, each a "Party" and collectively the "Parties").  Any capitalized terms used but not otherwise defined in this Agreement shall have the meaning given to them in the Purchase Agreement (as defined below).

> 4.    Mexico Newco hereby undertakes, with respect to the Fox Sports Trademarks and Fox Sports Domain Names and from and after the Original Execution Date, to meet all of the disclosed obligations of Assignor as set forth in the Redacted TMLA.

> (d)     "Redacted TMLA" means the Trademark License Agreement as attached in redacted form hereto as Exhibit 1.

32.    The incorporated Fox-21CF License Agreement, in turn, stated the precise scope of the license, including that the license to use the "Fox Sports" mark was non-exclusive and limited to use within Mexico:

> TRADEMARK LICENSE AGREEMENT (this "Agreement"), dated as of March 19, 2019 (the "Effective Date"), by and among FOX Corporation ("FOX"), and Twenty-First Century Fox, Inc., a Delaware corporation ("Remainco," and, together with FOX, each a "Party" and collectively the "Parties") [redacted].

. . .

> (e)     Grant of International Channel Trademark License.  Subject to the terms and conditions of this Agreement, FOX hereby grants to the Remainco Group [redacted] during the International Channel Term [redacted] a non-exclusive, [redacted] irrevocable and royalty-free license to use the International Channel Marks, solely in the International Channel Field in the International Channel Territory (the "International Channel License").

33.    The "International Channel Marks" is defined to include the "Fox Sports Trademarks," which in turn refers to a list of Mexico-registered Fox Sports Trademarks.  The International Channel Territory is defined as Mexico.

> (d)     the International Channel Marks shall be deemed a reference to the Fox Sports Trademarks;

> (b)     "Fox Sports Trademarks" means the trademarks listed on Schedule A attached hereto;

> (f)     the International Channel Territory shall be deemed a reference to Mexico;

34.     At no point did MDM ever own an exclusive license to the Fox Sports Trademarks, a license to use those marks in the United States, or a license to any United States-registered trademarks relating to the Fox Sports Trademarks.

35.     Under the Fox-21CF License Agreement, the licensee was required to consent to exclusive jurisdiction in New York regarding any and all claims, disputes, controversies, or disagreements between Fox and Defendant related to the Fox Sports Trademarks licensed under the Fox-21CF License Agreement.  That provision was incorporated into the 21CF-MDM Assignment Agreement.

> 12.3.    Governing Law and Submission to Jurisdiction.  This Agreement shall be governed by, and construed in accordance with, the Laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof.  Each Party irrevocably consents to the exclusive jurisdiction, forum and venue of the Commercial Division of the Supreme Court of the State of New York, New York County and the United States District Court for the Southern District of New York over any and all claims, disputes, controversies or disagreements between the Parties or any of their respective successors and assigns under or related to this Agreement.

36.     Under the Fox-21CF License Agreement, the licensee was required to acknowledge and affirm its familiarity with "the high standards, quality, style, and image of the Trademarks to which it receives a license under this Agreement" and was prohibited from using the marks in a manner that would have an adverse effect on the image or reputation of the Fox Sports Trademarks or Fox Corporation.  That provision was incorporated into the 21CF-MDM Assignment Agreement.

3024535

11

> 4.    Quality Control.
>
> 4.1.    Quality.  Each Party acknowledges and is familiar with the high standards, quality, style, and image of the Trademarks to which it receives a license under this Agreement and shall, at all times, conduct its business under such Trademarks and use such Trademarks in a manner consistent with these standards, quality, style, and image. [Redacted].  Each Party shall ensure that all services and goods provided by it, under or in association with any of the Trademarks to which it receives a license under this Agreement, shall (i) be substantially the same as or greater than the quality of the services and goods provided under such Trademarks as of the Distribution Effective Time and (ii) not have an adverse effect on the image or reputation of any such Trademarks,

> Remainco, or FOX.  Without the other Party's prior written consent, a Party shall not: (i) knowingly take any action which would reasonably be expected to dilute or impair the Trademarks to which it receives a license under this Agreement, or tarnish or bring into disrepute the reputation of or goodwill associated with such Trademarks or (ii) use the Trademarks to which it receives a license under this Agreement in any jurisdiction, including within the Licensed Territory, after such time that such Party has received a judgement from a court of competent jurisdiction that such use infringes, dilutes or otherwise violates the trademark rights or other proprietary rights of another Person.

### C.    MDM's Failure to Maintain the Reputation of Fox's Marks Leads Fox to Terminate the Licensing Agreement.

37.    Since securing a license to use the Fox Sports Trademarks, MDM entered into numerous contracts to broadcast major sporting events, including with the National Football League, CONCACAF, The Kings and Queens League, and multiple Mexican soccer clubs. MDM, however, repeatedly failed to pay its licensing fees for these broadcasts—leading to broadcast interruptions and the termination of their rights contracts.

38.    Since January 2024, MDM has had its broadcasts interrupted or lost its licensing rights from nearly a dozen sports properties for failure to pay licensing fees.  These broadcast interruptions and rights losses were widely reported in the public media.

a.    Liga Mx Club Monterrey (soccer) – License not renewed for non-payment of licensing fees;

b.  Liga Mx Club Tijuana (soccer) – License terminated for non-payment of licensing fees;

c.  Liga Mx Club Queretaro (soccer) – License terminated for non-payment of licensing fees;

d.  National Football League(football) – License was suspended for two weeks for non-payment of licensing fees;

e.  Liga Mx Club Pachuca (soccer) – License was not renewed for non-payment of licensing fees;

f.  Liga Mx Club Leon (soccer) – License was not renewed for non-payment of licensing fees;

g.  Liga Mx Club Juarez (soccer) – License was not renewed for non-payment of licensing fees;

h.  Concacaf Champions Cup (soccer) – License was not renewed for non-payment of licensing fees;

i.  Kings and Queens League (soccer) – License was not renewed for non-payment of licensing fees;

j.  Liga Mx Club Mazatlan (soccer) – License terminated for non-payment of licensing fees;

k.  Liga Mx Club Puebla (soccer) – License terminated for non-payment of licensing fees;

l.  Formula One (motorsports) –  License temporarily suspended for nonpayment of licensing fees and eventually lost entirely.

39.     These rights losses were publicized in a manner that damaged the reputation of Fox and the Fox Sports Trademarks.  As just one example, after MDM failed to pay licensing fees owed to the NFL, the NFL posted the following message on its X account.  The post was viewed over one million times.



40.     The broadcast disruptions and rights terminations occurred because of MDM's failure to pay its licensing fees.  MDM's failures to pay occurred publicly under the banner of the Fox Sports Trademarks, which damaged the reputation and goodwill associated with the Fox Sports Trademarks.

41.     The sports broadcasting business is competitive.  Reliability in broadcasting games is a vital component of a sports broadcasting brand.  Small disruptions in broadcasting sports events lead disappointed viewers to substitute away to other broadcasts reputed to be more reliable.  That in turn affects the willingness of advertisers to advertise on those broadcasts.

Viewers associate their frustration with Defendant's broadcasting black outs with the Fox Sports Trademarks, damaging the marks.

42.     In March 2025, Fox informed MDM that it was terminating MDM's license to use the Fox Sports Trademarks based on MDM's material breach of the quality control provision of the 21CF-MDM Assignment Agreement.  In its letter, Fox Corporation cited numerous instances of MDM damaging the reputation and goodwill of the Fox Sports Trademarks by associating the marks with MDM's repeated failures to pay licensing fees and the barrage of negative press that accompanied those failures.

**D.     MDM Attempts to Seize Control of the Fox Sports Trademarks and Tortiously Interfere with Fox's Business Relationships.**

43.     Despite the termination of the license, not only did MDM refuse to cease using the Fox Sports Trademarks, MDM has attempted to prevent Fox from using the Fox Sports Trademarks in Mexico and the United States.

44.     On March 26, 2025, MDM[1] obtained a no-notice injunction from a court in Mexico City (the "Judicial Trademark Injunction"), which enjoined Fox Corporation, Fox Media LLC, and Fox Cable Network Services LLC, from "interfering" with MDM's rights to use the Fox Sports Trademarks.

45.     MDM seeking the Judicial Trademark Injunction in a court in Mexico City breached the forum selection clause in the 21CF-MDM Assignment Agreement because MDM did not seek the injunction in New York, the forum that MDM agreed to exclusively litigate disputes over the Fox Sports Trademarks.

---

[1] Listed as plaintiffs was MDM, who purports to hold the license to the Fox Sports Trademarks, and Mexico Sports Distribution, LLC—MDM's affiliate.  Both are subsidiaries of Altener, S.A. de C.V. and both companies operate jointly under the brand "Fox Sports Mexico."

46. The injunction purported to prohibit Fox from using its "Fox Deportes" mark, a distinct Mexico-registered trademark that was not included in the Fox Sports Trademarks enumerated in the 21CF-MDM Assignment Agreement. The injunction also barred Fox's business partners from using the Fox Sports Trademarks. MDM's request for an injunction, and the subsequent order issuing the injunction, identified seventeen companies by name with whom Fox has a business relationship.

47. The allegation at the heart of MDM's injunction request was that MDM had an *exclusive* license to use the Fox Sports Trademarks. MDM claimed that Mexico's telecommunications regulator, the Instituto Federal de Telecomunicaciones ("IFT"), had issued a resolution in 2019 (the "2019 IFT Resolution") requiring that MDM's license to use the Fox Sports Trademarks be exclusive in nature.

48. That allegation was false.

49. In reality, the 2019 IFT Resolution required only that any license for the Fox Sports Trademarks be used exclusively for sports content, not that it created an exclusive license for sole use by the licensee. In a letter dated July 14, 2025, the IFT confirmed that it did not require an exclusive license be issued to MDM. To the contrary, the IFT reaffirmed that it specifically authorized the 21CF-MDM Assignment Agreement, which assigned a non-exclusive license to MDM for the Fox Sports Trademarks.

50. The 21CF-MDM Assignment Agreement expressly stated that MDM's license was non-exclusive. MDM did not reveal to the Mexico City court that the language of the 21CF-MDM Assignment Agreement expressly granted a non-exclusive license.

51. MDM publicly acknowledged that Fox had the right to use the Fox Sports Trademarks. In a notice published in a Mexican newspaper in 2025 announcing the license,

MDM admitted that the registrant of the Fox Sports Trademarks (*i.e.*, Fox) is authorized to use

and exploit the Fox Sports Trademarks.

| En consequencia, **unicamente el titular de dichos registros y/o Media Deportes Mexico, en su caracter de licenciataria autorizada en exclusiva, se encuentran facultados para usar y explotar las marcas previamente especificadas** mediante la prestacion de servicios comprendidos en las Clases Internacionales 42, 21, 38, 25, 16, 9, y relacionadas que ostenten y/o se distingan y/o identifiquen por medio de las marchas registradas antes mencionadas. | Consequently, **only the owner of said registrations and/or Media Deportes Mexico, in its capacity as exclusive authorized licensee, are authorized to use and exploit the previously specified trademarks** by providing services included in International Classes 42, 21, 38, 25, 16, 9, and related ones that bear and/or are distinguished and/or identified by means of the aforementioned registered trademarks. |
|---|---|

52. The original registrant is Fox.

53. MDM knew from its license agreement that Fox was the owner of the

registrations for the Fox Sports Trademarks.

54. MDM did not disclose that information to the Mexican court when seeking its

Judicial Trademark Injunction.

55. MDM asked the Mexican court to notify seventeen of Fox's business partners of

the injunction, thus interfering with their business relationship with Fox. At MDM's request, the

Judicial Trademark Injunction required notice of the injunction to be provided to the following

Fox business partners: Telefonía por Cable S.A. de C.V., Cablemas Telecommunications S.A. de

C.V., Total Play Telecommunications S.A.P.I.D, Amazon.com Services LLC, Corporación

Novavisión S. de RL de C.V., Claro Video LLC, Grupo W COM S.A. de C.V., Apple Store

LLC, Google Store LLC, Stripe LLC, ROKU LLC, Radio Movil Dipsa S.A. de C.V., Libros

Foráneos S.A. de C.V., Soccer Media Solutions S.A. de C.V., Next Natal S.A.P.I de C.V., and

Wis Master Mexico S.A. de C.V.

56. Fox has received calls from at least two entities that received the Judicial Trademark Injunction—Amazon.com Services LLC and Radio Movil Dipsa S.A. de C.V.—requesting an explanation of Fox's basis for doing business in Mexico.

57. MDM's purpose in noticing these third parties was to call into question the third parties' ability to legally conduct business with Fox in Mexico and increase the perceived risk of doing business with Fox, thereby damaging Fox's reputation with these third parties.

58. MDM also sought provisional relief from Mexico's Trademark Office, the Instituto Mexicano de la Propiedad Industrial ("IMPI"), advancing the same false representations they made in their request for the Judicial Trademark Injunction—that MDM had an exclusive license to the Fox Sports Trademarks (which it did not) and that the IFT had required that license to be exclusive (which it had not).

59. On April 11, 2025, MDM induced IMPI to issue a no-notice order, which incorporated the Judicial Trademark Injunction, authorizing IMPI officials to conduct an unannounced raid on Audiovisuales Media Pro Mexico, S.A. de C.V. (MEXICO) ("MediaPro"), one of Fox's broadcast production partners in Mexico that creates streaming content for "Fox en Tubi" in Mexico and television content for "Fox Deportes" in the United States under a contract with Fox Sports en Español.

60. On June 27, 2025, IMPI officials, along with lawyers for MDM, attempted to raid MediaPro's offices and production studios in Mexico to confiscate material that displayed the Fox Sports Trademarks. The basis for this raid—that MDM has an exclusive license—was lawless. Nevertheless, a group of IMPI officials and lawyers for MDM demanded access to MediaPro's offices. MediaPro's lawyers refused IMPI entry due to inconsistencies and handwritten alterations on the IMPI Raid Order.

3024535                                    18

61.     The raid caused significant disruption to MediaPro's business and has negatively affected Fox's relationship with MediaPro.  MediaPro decides with whom to do business.  Its selection of business partners is informed by whether a business partner is subject to disproportionate regulatory scrutiny (rightfully or wrongfully), including whether doing business with a partner carries increased risk of raids of MediaPro facilities by the Mexican government, which will necessarily disrupt MediaPro's own ability to do business and may cause MediaPro harm to its own reputation based on how the enhanced regulatory scrutiny is perceived by the public.

62.     The IMPI raid, premised on MDM's bad-faith litigation regarding the Fox Sports Trademarks, has harmed MediaPro's business relationship with Fox.  Since the raid, MediaPro now requires Fox to provide evidence that it has rights to the trademarks that MediaPro uses to produce content on Fox's behalf.  MediaPro also now requires Fox to indemnify it for any injury it may suffer arising from the use of marks in the production of Fox content.  These new requirements have caused Fox to suffer economic loss.

63.     On August 11, 2025, IMPI and MDM's lawyers returned to MediaPro's offices— this time with the Mexican police.  The police escorted all MediaPro employees from the building and shut down MediaPro's facilities, including by sealing MediaPro's offices.

3024535





64.     IMPI claimed that the closure arose from MediaPro's refusal in June 2025 to permit IMPI entry to MediaPro's facilities in connection with "trademark violations" stemming from MediaPro's use of the "Fox Deportes" mark, notwithstanding the fact that the "Fox

Deportes" mark is owned by, and registered to, Fox Corporation through its subsidiary Fox Media. The closure may last at least three days.

65. MediaPro does not use the "Fox Deportes" mark in Mexico. All content that MediaPro produces using the "Fox Deportes" mark is for broadcast in the United States only.

66. The injury that Fox has suffered from this second MediaPro raid is significant. Because of MediaPro's shutdown, Fox currently has been denied its principal live studio operations for its Spanish-speaking sports news coverage in the United States. In other words, Fox's ability to provide its Spanish-speaking audience in the United States with sports news coverage, including developments in baseball, football, hockey, basketball, or any other topical news stories in sports, has been seriously compromised.

67. Fox is currently moving rapidly to fill the production blackout that MDM has caused by inducing IMPI to conduct its second raid. The costs associated with those efforts include talent costs, crew costs, engineering costs, and technical costs relating to relaying content through different channels other than MediaPro.

68. The IMPI raid has also increased MediaPro's perceived costs of doing business with Fox. That is a concrete reputational harm suffered by Fox. Such reputational harm is difficult to quantify, as all reputational harm is, but it is no less damaging to Fox's ability to conduct business with MediaPro and its other partners.

**E.     MDM Uses the Fox Sports Trademarks in the United States.**

69. Not only did MDM unlawfully interfere with Fox's right to use the Fox Sports Trademarks in Mexico, MDM has infringed Fox's U.S.-registered Fox Sports trademarks in the United States.

3024535

21

70.     Even though the 21CF-MDM Assignment Agreement granted MDM rights to use the Fox Sports Trademarks only in Mexico, MDM uses the equivalent, U.S.-registered Fox Sports marks in websites and social media platforms that reach into the United States.

71.     MDM uses the "Fox Sports" standard characters on content displayed within the domain name www.foxsports.com.mx, which can be viewed in the United States.



72.     MDM claims ownership of the copyright at the bottom of the page of http://foxsports.com.mx.

> © 2024 Copyright, Media Deportes México, S. de R.L. de C.V.

73.    MDM uses Fox's registered "Fox Sports" oval, on its website, which is viewable

in the United States.



74.    MDM uses the "Fox Sports" standard characters in the form of a stylized logo on its Facebook page, which is viewable in the United States.



75.    MDM uses the "Fox Sports" standard characters in the form of a stylized logo on its X (f/k/a Twitter) account, which is viewable in the United States.



76.     MDM uses the "Fox Sports" standard characters in the form of a stylized logo on its YouTube account, which is viewable in the United States.



77.     MDM uses Fox's registered "Fox Sports" oval on its YouTube videos, which are viewable in the United States.



78.     MDM uses the "Fox Sports" standard characters in the form of a stylized logo on

its TikTok account, which is viewable in the United States.



79.     MDM uses the "Fox Sports" standard characters in the form of a stylized logo on its Instagram account, which is viewable in the United States.



80.     These channels compete with Fox in the United States for viewers.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT (FORUM SELECTION CLAUSE)

## (FOX CORPORATION AGAINST MDM)

81.     Fox incorporates by reference the allegations in Paragraphs 1 to 80 as though fully set forth herein.

82.     Fox Corporation, through its wholly-owned subsidiary Fox Media LLC, owns the Fox Sports Trademarks at issue, and licensed them to 21CF in the Fox-21CF License Agreement. 21CF was permitted to assign those rights to another party, subject to the terms of the license agreement with Fox.  21CF assigned those rights to MDM in the 21CF-MDM Assignment Agreement.  In that agreement, MDM agreed to as exclusive forum selection clause that required litigation arising under its license agreement to be brought in New York.

83.     In the 21CF-MDM Assignment Agreement, through which MDM claims the right to use the Fox Sports Trademarks, MDM agreed that New York would be the exclusive forum for "any and all claims, disputes, controversies or disagreements" "under or related to" the Fox Sports Trademarks.

84.     By pursuing and acquiring the Judicial Trademark Injunction before a tribunal in Mexico, MDM breached that forum selection clause because it sought to resolve a dispute over the Fox Sports Trademarks between itself and Fox Corporation in a judicial forum outside New York.  Namely, in those proceedings, MDM sought to resolve whether it had the right to use the Fox Sports Trademarks and whether it had the right to prevent Plaintiffs from using them in Mexico.

85.     Fox Corporation has performed its obligations under the Fox-21CF License Agreement or its performance has been excused.

86. Fox Corporation has been injured as a result of MDM pursuing the Judicial Trademark Injunction in Mexico, including by being forced to litigate in a foreign forum.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT (QUALITY CONTROL PROVISION)

## (FOX CORPORATION AGAINST MDM)

87. Fox incorporates by reference the allegations in Paragraphs 1 to 86 as though fully set forth herein.

88. Fox Corporation, through its wholly-owned subsidiary Fox Media LLC, owns the Fox Sports Trademarks at issue, and licensed them to 21CF in the Fox-21CF License Agreement. 21CF was permitted to assign those rights to another party, subject to the terms of the license agreement with Fox. 21CF assigned those rights to MDM in the 21CF-MDM Assignment Agreement. In that agreement, MDM assumed the obligation to maintain the quality and standards of the Fox Sports Trademarks and refrain from taking action that would injure the Fox Sports Trademarks or Fox.

89. In the 21CF-MDM Assignment Agreement, MDM agreed to maintain the high quality, reputation, and goodwill associated with Fox's marks. MDM also agreed not to do anything that would have an adverse effect on the reputation of the Fox Sports Trademarks. The 21CF-MDM Assignment Agreement obligated MDM to maintain the high quality of the Fox Sports Trademarks and not to do anything that would negatively impact the reputation and goodwill associated with those marks.

90. MDM's failure to pay their broadcast licensing fees resulted in highly public broadcast interruptions and contract terminations, which harmed the reputation of the Fox Sports Trademarks and Fox itself. This constituted a material breach of the quality control provision of the 21CF-MDM Assignment Agreement. Because of that material breach, Fox terminated

MDM's license. MDM, however, continues to use the Fox Sports Trademarks and thereby continues to harm the reputation of Fox and the Fox Sports Trademarks.

91. As a result of MDM's mismanagement, MDM experienced broadcast disruptions or lost contract rights to over a dozen sports broadcast properties.

92. Fox Corporation has performed its obligations under the Fox-21CF License Agreement or its performance has been excused.

93. As a result of MDM's breaches, the reputation and goodwill associated with Fox's marks have been damaged in breach of the Quality Control Provision. This reputational damage is particularly severe because the loss of contract rights and broadcast disruptions have been widely reported in the media.

94. As a result of MDM's continued unauthorized use of the Fox Sports Trademarks, Fox Corporation is suffering damage in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

### (FOX CORPORATION AND FOX EN ESPAÑOL AGAINST MDM)

95. Fox incorporates by reference the allegations in Paragraphs 1 to 94 as though fully set forth herein.

96. Fox Corporation and Fox Sports en Español have business relationships with MediaPro, as well as with Telefonía por Cable S.A. de C.V., Cablemas Telecommunications S.A. de C.V., Total Play Telecommunications S.A.P.I.D, Amazon.com Services LLC, Corporación Novavisión S. de RL de C.V., Claro Video LLC, Grupo W COM S.A. de C.V., Apple Store LLC, Google Store LLC, Stripe LLC, ROKU LLC, Radio Movil Dipsa S.A. de C.V., Libros Foráneos S.A. de C.V., Soccer Media Solutions S.A. de C.V., Next Natal S.A.P.I de C.V., and Wis Master Mexico S.A. de C.V.

97. MDM has interfered with those business relations via improper means by initiating bad-faith litigation to interfere with Fox's relationship with these third parties.

98. MDM's interfering conduct was done for a wrongful purpose and used improper means. MDM pursued both the Judicial Trademark Injunction for the wrongful purpose of interfering with Fox's business relationships. That injunction constitutes an improper means because MDM did not believe in the merits of its lawsuit. It independently constitutes an improper means because MDM initiated the lawsuit in bad faith to harass Fox's third-party business partners.

99. Specifically, MDM engaged in bad faith litigation when it pursued the Judicial Trademark Injunction based on the knowingly false claim that MDM had an exclusive license to the Fox Sports Trademarks. That misconduct caused the Mexico court to notice the Judicial Trademark Injunction to parties that have business relationships with Fox and caused IMPI to raid and shut down Fox's business partner, MediaPro. That misconduct interfered with Fox's business relationships.

100. MDM's bad-faith litigation has targeted specific business relationships maintained by Fox, most notably its relationship with MediaPro, but also Fox's advertising partners, technical service providers, distributors, and other business partners specifically identified by name in the Judicial Trademark Injunction.

101. Fox Sports en Español has a business relationship with MediaPro because it has a contract with MediaPro for production services. The contract between MediaPro and Fox Sports en Español permits the benefits of the agreement to be extended to Fox Sports en Español's divisions, subsidiaries, affiliates, and parent companies, including Fox Corporation.

33

102.   Fox Corporation has a distinct business relationship with MediaPro. Fox Corporation has business dealings with MediaPro that concern which of Fox Corporation's subsidiaries and affiliates MediaPro will produce content for, among other things.

103.   MDM's bad faith-litigation has injured the relationship between Fox and MediaPro. As a result of the IMPI raid, Fox's reputation with MediaPro has been damaged. Namely, the trust that MediaPro has in its relationship with Fox Corporation and Fox Sports en Español has been compromised. As immediate evidence of that deterioration, MediaPro has demanded that Fox Corporation and Fox Sports en Español prove their entitlement to use trademarks in Fox content and has demanded that Fox Corporation and Fox Sports en Español indemnify MediaPro on matters concerning the use of Fox marks. Those requirements have caused Fox economic injury.

104.   Mediapro's new demands of Fox are emblematic of the reputational injury Fox has suffered with MediaPro. MediaPro clearly perceives increased cost and risk in doing business with Fox Corporation and Fox Sports en Español. This constitutes distinct reputational injury suffered by Fox Corporation because it has caused MediaPro to impose additional costs and requirements as a condition of doing business with Fox Corporation or any other of its affiliates or subsidiaries that it designates in the future.

105.   MDM's bad-faith litigation has also harmed Fox by causing IMPI to shut down MediaPro's production facilities. Because of MediaPro's shutdown, Fox currently has no live studio operations in Mexico for its Spanish-speaking sports news coverage in the United States. MediaPro's production facility in Mexico was Fox's principal location for broadcasting live Spanish-language content into the United States. . Although Fox is currently moving rapidly to

34

fill the production blackout that MDM has caused, Fox has had to incur costs to fill the content blackout, including talent costs, crew costs, engineering costs, and other technical costs.

106.    Fox's impaired ability to produce Spanish-language sports content has also resulted in reputational harm and loss of good will from its Spanish-speaking viewership in the U.S. This reputational harm was caused by MDM's bad-faith litigation.

107.    MDM's bad faith litigation has injured the relationship between Fox and Telefonía por Cable S.A. de C.V., Cablemas Telecommunications S.A. de C.V., Total Play Telecommunications S.A.P.I.D, Amazon.com Services LLC, Corporación Novavisión S. de RL de C.V., Claro Video LLC, Grupo W COM S.A. de C.V., Apple Store LLC, Google Store LLC, Stripe LLC, ROKU LLC, Radio Movil Dipsa S.A. de C.V., Libros Foráneos S.A. de C.V., Soccer Media Solutions S.A. de C.V., Next Natal S.A.P.I de C.V., and Wis Master Mexico S.A. de C.V. whose business relationships with Fox are clouded by the threat of illegal harassment by MDM should they choose to do business with Fox.

108.    This injury to Fox's reputation with its business partners is evidenced by the fact that Fox has received calls from at least two entities that received notice of the Judicial Trademark Injunction—Amazon.com Services LLC and Radio Movil Dipsa S.A. de C.V.— inquiring as to the status of Fox's trademarks and requesting an explanation of the documents that they received.

109.    These third parties are also at imminent risk of suffering further harm and disruption to their businesses, as the IMPI raid and shutdown of MediaPro makes clear.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE LANHAM ACT,  15 U.S.C. §§ 1114, 1125**

**(FOX MEDIA LLC AGAINST MDM)**

110.    Fox incorporates by reference the allegations in Paragraphs 1 to 109 as though fully set forth herein.

111.    Fox Media has valid marks that are entitled to protection.  Fox Media registered these marks with the United States Patent and Trademark Office.  These marks are incontestable because Fox Media filed the appropriate affidavits of continuous use and incontestability under sections 8 and 15 of the Lanham Trademark Act.

112.    MDM uses Fox's U.S.-registered trademarks in commerce in the United States without authorization.  That conduct is likely to cause confusion as to the origin or sponsorship of MDM's channels in the United States.  MDM uses the domain name www.foxsports.com.mx, which can be viewed in the United States.  MDM uses a "Fox Sports" logo and purport to be "FOX Sports MX" on its YouTube, TikTok, and Instagram accounts, which can all be viewed in the United States.

113.    MDM uses on their website and YouTube accounts Fox's "Fox Sports" oval, which is registered with the United States Patent and Trademark Office.

114.    MDM's use of the domain name and other U.S.-registered Fox Sports marks in social media are directed at the United States and are likely to confuse United States viewers into thinking that MDM's domain and social media are provided or authorized by Fox when they are not.  These channels compete with Fox in the United States for viewers, as well as advertising revenue.

115.    As a result of MDM's unauthorized use of Fox Media's Fox Sports marks in the U.S., Fox Media has been injured.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief:

a. Judgement in Plaintiffs' favor and against MDM on all causes of action;

b. An injunction prohibiting MDM from using Fox Sports marks in the United States;

c. An injunction prohibiting MDM from using the Fox Sports Trademarks in Mexico;

d. An injunction prohibiting MDM from interfering with Fox's business relationships, including those specifically mentioned in the Judicial Trademark Injunction.

e. An anti-suit injunction prohibiting MDM from seeking to enforce the Judicial Trademark Injunction and or seek any other relief in Mexico related to the 21CF-MDM Assignment Agreement;

f. For other equitable and provisional relief;

g. An award of general, compensatory, expectation, and consequential damages to Plaintiffs;

h. An award of punitive damages;

i. Reasonable attorneys' fees and costs, as allowed by law;

j. Pre-judgment and post-judgment interest, as allowed by law; and

k. Such further relief as the Court may deem just and proper.

3024535

37

Dated: August 13, 2025

ELLIS GEORGE LLP


By:    */s/ Stephen P. Farrelly*
       Stephen P. Farrelly

Eric M. George
Katherine A. Petti, *Pro Hac Vice*
Christopher T. Berg, *Pro Hac Vice*
ELLIS GEORGE LLP
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone:  (310) 274-7100
Facsimile:  (310) 275-5697
egeorge@ellisgeorge.com
kpetti@ellisgeorge.com
cberg@ellisgeorge.com

Stephen P. Farrelly
ELLIS GEORGE LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, NY 10019
Telephone:  (212) 413-2600
Facsimile:  (212) 413-2629
sfarrelly@ellisgeorge.com

*Attorneys for Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC*

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOX CORPORATION; FOX MEDIA LLC; FOX SPORTS EN ESPAÑOL LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MEDIA DEPORTES MEXICO, S. de R.L. DE C.V., <br><br> Defendant. | No. 1:25-cv-06703 <br><br> [PROPOSED] TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 65(B) |

Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports En Español LLC have applied *ex parte* under Rule 65 of the Federal Rules of Civil Procedure for a temporary restraining order and order to show cause against Defendant Media Deportes Mexico, S. de R.L. de C.V. ("MDM").

Having reviewed the papers, declarations, exhibits, and memorandum of law, the Court hereby makes the following findings of fact and conclusions of law:

1.      Plaintiffs have demonstrated that they are entitled to the injunctive relief sought by establishing that they are likely to succeed on the merits of their claims, that they are likely to suffer irreparable harm absent the injunctive relief, that the equities weigh in favor of the injunctive relief, and that the public interest weighs in favor of the injunctive relief.

2.      With respect to the likelihood of success on the merits, the evidence shows the following:

a.      Fox Corporation granted Twenty First Century Fox ("21CF") a non-exclusive license to use certain Fox Sports trademarks.

      b.    21CF assigned its non-exclusive license to the following Fox Sports

trademarks to MDM for use in Mexico (the "Fox Sports Trademarks"):

| | Mark Name | Mark Image | International Classes | Country | Status | App No. | Registration Number |
|---|---|---|---|---|---|---|---|
| 1 | AGENDA FOX SPORTS | | 43 | Mexico | Registered | 1717649 | 1652939 |
| 2 | CIRCUITO FOX SPORTS | | 41 | Mexico | Registered | 1436830 | 1449434 |
| 3 | COPA FOX SPORTS KIDS | | 9 | Mexico | Registered | 1350927 | 1369015 |
| 4 | COPA FOX SPORTS KIDS | | 38 | Mexico | Registered | 1350928 | 1369013 |
| 5 | COPA FOX SPORTS KIDS | | 41 | Mexico | Registered | 1350930 | 1369014 |
| 6 | FOX FIGHT CLUB | | 41 | Mexico | Registered | 1483645 | 1478480 |
| 7 | FOX GOLF MEXICO | | 41 | Mexico | Registered | 694259 | 867973 |
| 8 | FOX SPORTS | | 16 | Mexico | Registered | 753483 | 925318 |
| 9 | FOX SPORTS | | 41 | Mexico | Registered | 265389 | 636361 |
| 10 | FOX SPORTS | | 38 | Mexico | Registered | 265370 | 636362 |
| 11 | FOX SPORTS | | 9 | Mexico | Registered | 1253691 | 1525583 |
| 12 | FOX SPORTS (with Text) | FOX | 38 | Mexico | Registered | 1306352 | 1339943 |
| 13 | FOX SPORTS (with Text) | FOX | 41 | Mexico | Registered | 1306349 | 1339940 |
| 14 | FOX SPORTS (with Text) | FOX | 25 | Mexico | Registered | 1610073 | 1600725 |
| 15 | FOX SPORTS + (Banner) | FOXSPORTS+ | 41 | Mexico | Registered | 1033021 | 1132816 |
| 16 | FOX SPORTS + (Banner) | FOXSPORTS+ | 38 | Mexico | Registered | 1033022 | 1138645 |
| 17 | FOX SPORTS 2 | | 38 | Mexico | Registered | 1299816 | 1338302 |
| 18 | FOX SPORTS 2 | | 41 | Mexico | Registered | 1299817 | 1338214 |
| 19 | FOX SPORTS 2 | FOX | 38 | Mexico | Registered | 1306350 | 1339941 |

| # | Mark | Logo | Class | Country | Status | | |
|---|---|---|---|---|---|---|---|
| 10 | FOX SPORTS 2 | | 41 | Mexico | Registered | 1306351 | 1419942 |
| 11 | FOX SPORTS 3 | | 38 | Mexico | Registered | 1299828 | 1346215 |
| 12 | FOX SPORTS 3 | | 41 | Mexico | Registered | 1299830 | 1346216 |
| 13 | FOX SPORTS 3 | | 38 | Mexico | Registered | 1306356 | 1339943 |
| 14 | FOX SPORTS 3 | | 41 | Mexico | Registered | 1306353 | 1339944 |
| 15 | FOX SPORTS CANTERA | | 41 | Mexico | Registered | 1406690 | 1417195 |
| 26 | FOX SPORTS PLAY | | 9 | Mexico | Registered | 1283315 | 1314838 |
| 27 | FOX SPORTS PLAY | | 38 | Mexico | Registered | 1283316 | 1317158 |
| 28 | FOX SPORTS PLAY | | 41 | Mexico | Registered | 1283318 | 1320027 |
| 29 | FOX SPORTS PLAY | | 42 | Mexico | Registered | 1283320 | 1317374 |
| 30 | FOX SPORTS RADIO | | 38 | Mexico | Registered | 1233187 | 1263912 |
| 31 | FOX SPORTS RADIO | | 41 | Mexico | Registered | 1233191 | 1284757 |
| 32 | FACTURFOX | | 41 | Mexico | Registered | 1969943 | 1770079 |
| 33 | FOX PLAY | | 9 | Mexico | Registered | 1282827 | 1319645 |
| 34 | FOX PLAY | | 38 | Mexico | Registered | 1282829 | 1319646 |
| 35 | FOX PLAY | | 41 | Mexico | Registered | 1282831 | 1320073 |
| 36 | FOX PLAY | | 42 | Mexico | Registered | 1282832 | 1320537 |

In doing so, MDM assumed the obligations that 21CF owed to Fox, including (1) subjecting itself to personal jurisdiction in New York and agreeing to litigate any disputes arising out of the Fox Sports Trademarks in a New York court, as well as (2) agreeing not to take any actions that would harm the reputation and good will of the Fox Sports Trademarks.

       c.       MDM thereafter operated a sports broadcasting business using the Fox Sports Trademarks in Mexico under the brand name Fox Sports Mexico. Over the last 18 months, MDM experienced broadcast disruptions and lost licensing rights to several major

sporting events for failure to pay licensing fees. These rights losses were reported in the news media.

d.      Because of these rights losses, Fox Corporation terminated MDM's license to use the Fox Sports Trademarks, because MDM's failure to pay its licensing fees, and the loss of rights that resulted, harmed the reputation and good will of the Fox Sports Trademarks, in breach of MDM's agreement.

e.      Following that termination, MDM initiated litigation in Mexico and obtained an injunction prohibiting Fox Corporation, Fox Media LLC, and Fox Cable Network Services LLC from injuring MDM's rights to use the Fox Sports Trademarks. In seeking the injunction, MDM asserted that it held an exclusive license to use the Fox Sports Trademarks in Mexico. The injunction included a prohibition against using the "Fox Deportes" mark, which was not included in MDM's agreement granting it a non-exclusive license to use the Fox Sports marks. MDM's injunction asked that 17 of Fox's business partners receive notice of the injunction. At least two of those companies received notice of the injunction and asked Fox about its legal basis for doing business in Mexico.

f.      In seeking the Mexico injunction, MDM asserted that the IFT, a Mexican telecommunications regulator, ordered that MDM must receive an exclusive license to use the Fox Sports Trademarks. That contention is inconsistent with the license-granting language in MDM's agreement and is inconsistent with statements made by the IFT.

g.      MDM published a notice in a Mexican newspaper announcing its license to use the Fox Sports Trademarks. That notice state that both the original registrant of those marks and MDM had the exclusive right to use the Fox Sports Trademarks. Fox Corporation or one of its affiliates is the original registrant of the Fox Sports Trademarks.

3034282                                         4

h.   MDM obtained the Mexico injunction in March 2025. To date, no party subject to the injunction has been served with a complaint asserting the claims that underlie MDM's injunction.

i.   In April 2025, MDM requested an order from the Mexican Trademark Office, IMPI, to conduct a raid of MediaPro, a studio production company that provides live Spanish-language programming for Fox Sports en Español for broadcast in the United States. MediaPro is Fox Sports en Español's primary facility for producing Spanish-language content for Fox's U.S. audience. In its order, IMPI cited MDM's injunction as the basis for granting MDM's request.

j.   In June 2025, IMPI officials attempted to search MediaPro's facilities in Mexico for material in violation of MDM's injunction. MediaPro refused IMPI entry to its facilities. As a result of this raid, MediaPro required Fox to indemnify it for any harm arising from producing content for Fox in Mexico.

k.   On August 11, 2025, IMPI shutdown MediaPro's facilities in Mexico. As a result of that shutdown, Fox's ability to broadcast Spanish-language content to the United States was disrupted. Fox incurred costs to find alternative avenues to produce and broadcast live Spanish-language content for consumption in the U.S.

l.   On August 12, 2025, MDM called personnel at Fox to ascertain where else in Mexico Fox maintains production facilities. During that call, MDM indicated that it was seeking to disrupt additional facilities used by Fox.

m.   Fox Media LLC owns the following U.S.-registered trademarks relating to Fox Sports (the "U.S. Fox Sports marks"):

- A standard character mark to "Fox Sports" under serial number 74486901 and classified as Class 038 for use in television and cable television broadcasting services.

- A standard character mark to "Fox Sports" under serial number 74802818 and classified as Class 041 for use in entertainment services in the nature of production and distribution of television programs.

- A standard character mark to "Fox Sports" under serial number 75524006 and classified as Class 041 for use in providing on-line information in the field of sports via a global communications network.

- A mark to a particular illustration with "Fox Sports" surrounded by a stylized oval under serial number 78488856 and classified as Class 038 for use in television transmission services:



- A mark to the same illustration with "Fox Sports" depicted *supra* but under serial number 78488865 classified as Class 41 for use in entertainment services in the nature of television programming; providing on-line information in the field of sports via the Internet.

    n.    MDM uses marks identical to the U.S. Fox Sports marks on websites and social media that are accessible in the United States. The marks used by MDM are likely to cause consumer confusion because they are identical to the U.S. Fox Sports marks.

o.    MDM does not have a license to use the U.S. Fox Sports marks in the U.S.

p.    The evidence shows that MDM breached the forum selection clause of its license agreement by seeking the Mexico injunction.

q.    The evidence shows that Fox Corporation is likely to succeed in showing MDM breached its license agreement by failing to pay licensing fees for sports content associate with the Fox Sports Trademarks.

r.    The evidence shows that Fox Corporation is likely to succeed in showing that (1) MDM sought its Mexico injunction in bad faith by basing its request on the false claim that it holds an exclusive license to use the Fox Sports Trademarks, and (2) MDM used its Mexico injunction to interfere with Fox's business relations, including Fox's relationship with MediaPro.

s.    The evidence shows that Fox is likely to succeed in showing that MDM infringed the U.S.-registered Fox Sports marks.

3.    With respect to the irreparable harm factor, the evidence shows that Defendant's actions are likely to cause irreparable harm to Plaintiffs. The evidence shows that Defendant's pursuit and use of the Mexico injunction will frustrate the forum selection clause in MDM's license agreement and force Fox Corporation to litigate in a forum not contemplated by the agreement, which constitutes irreparable harm. The evidence shows that MDM's continued use of the Fox Sports Trademarks and pursuit of bad-faith litigation will likely damage Fox Corporation's reputation, which constitutes irreparable harm. The evidence shows that MDM's use of the Mexico injunction will likely prevent Fox from providing its products to its consumers, which constitutes irreparable harm. The evidence shows that MDM's unauthorized use of marks identical to the U.S.-registered Fox Sports marks will likely cause consumer

confusion in the United States, which constitute irreparable harm. A temporary restraining order is necessary to prevent damage to Plaintiffs' reputation, to vindicate the forum selection clause in MDM's license, to enable Plaintiffs to continue providing its broadcasting product to consumers, and to prevent infringement of the U.S.-registered Fox Sports marks.

4.      With respect to the balance of equities and public interest factors, the evidence shows that, without an injunction, Fox will be denied its contractual right to the forum-selection clause, continue to suffer irreparable harm by MDM's wrongful use of its marks, and be subject to harassment and disruption arising from litigation that MDM had no right to pursue. MDM has no countervailing interest. The public interest weighs in favor of issuing an injunction because the public interest is served in enforcing contracts, including forum selection clauses, as well as the trademark laws.

5.      The evidence shows that an anti-suit injunction prohibiting MDM from seeking to enforce the Mexico injunction, or otherwise use the judicial and regulatory process in Mexico to pursue rights under MDM's license agreement, is appropriate. The parties to the proceeding from which the Mexico injunction issued are substantially similar to the parties in this action, and an injunction would be dispositive of the proceeding in the foreign forum. The evidence also shows that the *China Trade* factors weigh in favor of granting an anti-suit injunction.

6.      The evidence shows that a temporary restraining order should issue without notice to Defendant. If provided notice, Defendant is likely to use the Mexico injunction to disrupt Fox's business before this Court could act. In that event, the evidence shows that Defendant is likely to take actions that render this Court unable to grant effective relief. For that reason, a temporary restraining order without notice to Defendant is appropriate.

8

**THEREFORE, IT IS HEREBY ORDERED THAT** Defendant show cause before a motion term of this Court, at Room 12-B, United States Courthouse, 500 Pearl Street, in the City, County, and State of New York, on August 28, 2025, at 11:30 a.m. thereof, or as soon thereafter as counsel may be heard, why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure should not be entered granting Plaintiffs a preliminary injunction and restraining Defendant, its agents, employees, attorneys, and any persons in active concert or participation with it, from doing the following:

(1) using the Fox Sports Trademarks in Mexico;

(2) using the U.S. Fox Sports marks in the United States;

(3) pursuing any legal or regulatory action relating to the Fox Sports Trademarks in Mexico, including seeking to enforce the injunction issued on March 26, 2025 by Civil Department 42 of the Superior Court of Justice of Mexico City; and

(4) taking any action to disrupt, hinder, or undermine Fox's business relationships with Audiovisuales Media Pro Mexico, S.A. de C.V. (MEXICO) ("MediaPro"), Telefonía por Cable S.A. de C.V., Cablemas Telecommunications S.A. de C.V., Total Play Telecommunications S.A.P.I.D, Amazon.com Services LLC, Corporación Novavisión S. de RL de C.V., Claro Video LLC, Grupo W COM S.A. de C.V., Apple Store LLC, Google Store LLC, Stripe LLC, ROKU LLC, Radio Movil Dipsa S.A. de C.V., Libros Foráneos S.A. de C.V., Soccer Media Solutions S.A. de C.V., Next Natal S.A.P.I de C.V., or Wis Master Mexico S.A. de C.V.

The answering papers, if any, shall be filed and served on or before August 21, 2025. Any reply shall be filed and served on or before August 26 2025.

It is further **ORDERED** that, sufficient reason having been shown therefor, pending the hearing of Plaintiffs' application for a preliminary injunction, Defendant and anyone acting in concert with Defendant are restrained from

(1) using the Fox Sports Trademarks in Mexico;

(2) using the U.S. Fox Sports marks in the United States;

(3) pursuing any legal or regulatory action relating to the Fox Sports Trademarks in Mexico, including seeking to enforce the injunction issued on March 26, 2025 by Civil Department 42 of the Superior Court of Justice of Mexico City; and

(4) taking any action to disrupt, hinder, or undermine Fox's business relationships with Audiovisuales Media Pro Mexico, S.A. de C.V. (MEXICO) ("MediaPro"), Telefonía por Cable S.A. de C.V., Cablemas Telecommunications S.A. de C.V., Total Play Telecommunications S.A.P.I.D, Amazon.com Services LLC, Corporación Novavisión S. de RL de C.V., Claro Video LLC, Grupo W COM S.A. de C.V., Apple Store LLC, Google Store LLC, Stripe LLC, ROKU LLC, Radio Movil Dipsa S.A. de C.V., Libros Foráneos S.A. de C.V., Soccer Media Solutions S.A. de C.V., Next Natal S.A.P.I de C.V., or Wis Master Mexico S.A. de C.V.

It is further **ORDERED** that Plaintiffs are excused from posting a surety bond for good cause shown.

It is further **ORDERED** that providing a copy via electronic mail of this order, all papers submitted in support of Plaintiffs' Motion, and the complaint initiating this action upon the defendant or its counsel on or before _____ Five _____ o'clock in the afternoon, _____ on August 15, 2025 _____ shall be deemed good and sufficient service thereof.

**IT IS SO ORDERED.**

By the Court:

_____8/14/25 at 3:15 pm_____        _____
Dated                                   United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOX CORPORATION, et al., <br><br>       Plaintiffs, <br><br>   -v- <br><br> MEDIA DEPORTES MEXICO, S. de R.L. de C.V., <br><br>       Defendant. | 25-cv-6703 (JSR) <br><br> ORDER GRANTING PRELIMINARY INJUNCTION |

JED S. RAKOFF, U.S.D.J.:

On August 14, 2025, the Court entered a Temporary Restraining Order prohibiting defendant Media Deportes Mexico, S. de R.L. de C.V. ("MDM") from (1) using certain "Fox Sports Trademarks" in Mexico; (2) using certain U.S.-registered trademarks relating to Fox Sports in the United States; (3) pursuing legal or regulatory action relating to the Fox Sports Trademarks in Mexico; and (4) taking any action to disrupt, hinder, or undermine plaintiffs' business relationships with certain entities. See ECF No. 29. The Court subsequently modified that Temporary Restraining Order to specifically prohibit MDM from seeking to enforce an injunction issued on August 27, 2025, by Civil Department 42 of the Superior Court of Justice of Mexico City. See ECF No. 41.

When the Court entered the Temporary Restraining Order, it also ordered MDM to show cause why an Order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure granting plaintiffs a preliminary injunction. See ECF No. 29. MDM has not, however, appeared or filed any opposing papers in this action.

1

On September 5, 2025, the Court held a hearing on plaintiffs' application for a preliminary injunction. Having reviewed the papers, declarations, exhibits, and memorandum of law filed by plaintiffs, and having considered the arguments of counsel, the Court hereby grants plaintiffs' application.

Accordingly, the Court hereby enjoins MDM, its agents, employees, attorneys, and any persons in active concert or participation with it, from doing the following during the pendency of this litigation:

(1) using the "Fox Sports Trademarks," as that term is defined in the Temporary Restraining Order, in Mexico;

(2) using the "U.S. Fox Sports marks," as that term is defined in the Temporary Restraining Order, in the United States;

(3) pursuing any legal or regulatory action relating to any trademark containing the word "Fox" in Mexico, including seeking to enforce the injunction issued on March 26, 2025, by Civil Department 42 of the Superior Court of Justice of Mexico City and seeking to enforce the injunction dated August 27, 2025 (published on August 28, 2025) by Civil Department 42 of the Superior Court of Justice of Mexico City; and

(4) taking any action to disrupt, hinder, or undermine plaintiffs' business relationships with Audiovisuales Media Pro Mexico, S.A. de C.V. (MEXICO) ("MediaPro"), Telefonía por Cable S.A. de C.V., Cablemas Telecommunications S.A. de C.V., Total Play Telecommunications S.A.P.I.D., Amazon.com Services LLC, Corporación Novavisión S. de R.L.

2

de C.V., Claro Video LLC, Grupo W COM S.A. de C.V., Apple Store LLC, Google Store LLC, Stripe LLC, ROKU LLC, Radio Movil Dipsa S.A. de C.V., Libros Foráneos S.A. de C.V., Soccer Media Solutions S.A. de C.V., Next Natal S.A.P.I. de C.V., or Wis Master Mexico S.A. de C.V.

The Court hereby orders that plaintiffs are authorized to provide notice of this Order to Audiovisuales Media Pro Mexico, S.A. de C.V. (MEXICO) ("MediaPro"), Telefonía por Cable S.A. de C.V., Cablemas Telecommunications S.A. de C.V., Total Play Telecommunications S.A.P.I.D., Amazon.com Services LLC, Corporación Novavisión S. de R.L. de C.V., Claro Video LLC, Grupo W COM S.A. de C.V., Apple Store LLC, Google Store LLC, Stripe LLC, ROKU LLC, Radio Movil Dipsa S.A. de C.V., Libros Foráneos S.A. de C.V., Soccer Media Solutions S.A. de C.V., Next Natal S.A.P.I. de C.V., or Wis Master Mexico S.A. de C.V. and any other business or entity that currently does business or has done business in the past with MDM or its affiliates, subsidiaries, or parents relating to sports content in Mexico.

The Court further hereby orders plaintiffs to provide a copy of this Order by electronic mail to MDM or its counsel on or before September 8, 2025, which shall be deemed good and sufficient service hereof.

SO ORDERED.

New York, New York
September 5, 2025                    _____
                                        JED S. RAKOFF, U.S.D.J.

3

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOX CORPORATION; FOX MEDIA LLC; and FOX SPORTS EN ESPAÑOL LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,<br><br>Defendant. | Case No.: 1:25-cv-06703<br><br>**ORDER HOLDING MEXICO SPORTS DISTRIBUTION LLC, GRUPO LAUMAN HOLDING, AND MANUEL ARROYO IN CONTEMPT** |

Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports En Español have moved for emergency relief to hold non-parties Mexico Sports Distribution LLC ("MSD"), Grupo Lauman Holding, S. de R.L. de C.V. ("Grupo Lauman"), and Manuel Arroyo in civil contempt for violating the Temporary Restraining Order issued by this Court on August 14, 2025 ("Temporary Restraining Order").

Having reviewed the submissions and evidence and after holding a telephonic hearing concerning this application earlier today, the Court finds that MSD, Grupo Lauman, and Manuel Arroyo have clearly acted in civil contempt of the Temporary Restraining Order by being in active concert with Defendant's violations of the Temporary Restraining Order, including Defendant's refusal to cease using the trademarks identified in the Temporary Restraining Order and Defendant's pursuit of the injunction dated August 27, 2025 by the Civil Department 42 of the Superior Court of Justice of Mexico City (the "August 27, 2025 Mexico Injunction").

Accordingly, it is **ORDERED** that the Court hereby imposes civil contempt sanctions, jointly and severally, against MSD, Grupo Lauman, and Manuel Arroyo by imposing a fine of $200,000 per day to be paid daily to the Clerk of the Court of the Southern District of New York beginning September 6, 2025, and continuing each day thereafter (1) until Defendant and those

1

acting in concert with it—including MSD, Grupo Lauman, and Manuel Arroyo—cease using the trademarks identified in the Temporary Restraining Order and (2) until Defendant withdraws the August 27, 2025 Mexico Injunction. As stated, MSD, Grupo Lauman, and Manuel Arroyo are jointly and severally liable for this fine.

MSD, Grupo Lauman, and Manuel Arroyo may present any opposition to this Order by having counsel appear in person at the hearing already scheduled for September 5, 2025, at 2 p.m. Eastern Time in Courtroom 14B, United States Courthouse, 500 Pearl Street, in the City, County, and State of New York.

**IT IS SO ORDERED.**

New York, NY

By the Court:

8/29/25

Dated at 1:10 pm

_____
United States District Judge
Hon. Jed S. Rakoff

2

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOX CORPORATION; FOX MEDIA LLC; and FOX SPORTS EN ESPAÑOL LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,<br><br>Defendant. | Case No.: 1:25-cv-06703<br><br>[PROPOSED] ORDER APPOINTING RECEIVER AND IMPOSING OTHER SANCTIONS ON MEXICO SPORTS DISTRIBUTION, LLC |

The Court ordered the parties to submit briefing on what sanctions the Court should impose on contemnor Mexico Sports Distribution, LLC ("MSD") after holding MSD in further contempt for violating the Court's asset freeze order, ECF No. 95. Upon consideration of the materials submitted to the Court by Plaintiffs and MSD, the Court hereby ORDERS the following:

IT IS HEREBY ORDERED that Robert Seiden (the "Receiver") is appointed to act as receiver of MSD; and it is further

ORDERED that the Receiver shall exercise all powers and authority of MSD that the receiver deems reasonable and prudent to bring MSD into compliance with the Court's orders, including but not limited to the Court's temporary restraining order, ECF No. 29, preliminary injunction, ECF No. 49, contempt orders, ECF Nos. 45 and 215, and asset freeze order, ECF No. 95. Those powers include the following:

1.    to sign documents such as instruments of transfer to effectuate or implement the Court's orders on behalf of MSD;

1

Case 1:25-cv-06703-JSR   Document 226   Filed 04/24/26   Page 2 of 10

2.  to cause any corporate resolutions or any other requisite documents of MSD to be filed with the requisite registry, whether in the United States, Mexico, or any other country;

3.  to amend MSD's corporate charter, bylaws, or related corporate documents;

4.  to make any request or demand for documents or information from any person or entity (including MSD, its affiliates, Fox Sports Mexico, or any third party);

5.  to seize, preserve, take possession of, and control the assets, property, electronically stored information, computers, databases, documents, and any other information of MSD, including, for that purpose, entering, with the aid and assistance of any person, any premises where those materials or information are or may be stored and to remove the same;

6.  to make forensic images of any phones, tablets, computers, or other devices used to send or receive electronic communications in the conduct of MSD's business, including the personal devices of MSD's directors, officers, employees, or agents to the extent the information on those devices is related to MSD's business;

7.  to operate MSD's business and to assign, sell, lease, or otherwise dispose of all or any part of MSD's assets, without demand upon or notice to MSD;

8.  to operate MSD's joint venture Fox Sports Mexico, including the use of any intellectual property in the United States or Mexico and the operation of any websites, social media accounts, or any other medium that uses or displays intellectual property;

9.  to exercise discretion in all voting and consensual rights of MSD, including any voting or consensual rights associated with Fox Sports Mexico;

2

10.  to convene MSD board meetings and exercise the powers of MSD's board of directors;

11.  to remove or appoint any board member, officer, or employee of MSD;

12.  to control the bank accounts of MSD;

13.  to sell and/or pass title of any assets of MSD to any other person or to sell and distribute the proceeds of any sale to Plaintiffs;

14.  to notify MSD's account debtors and obligors to make payments directly to Plaintiffs and to enforce MSD's rights against such account debtors and obligors;

15.  to withdraw, initiate, continue, participate in, or defend any legal actions or regulatory proceedings on MSD's behalf, including but not limited to petitioning to lift the injunction issued by the 42nd Court of the Superior Court of Mexico City against Plaintiffs or their affiliates;

16.  to retain or dismiss advisors, legal counsel, consultants, agents, supplier, or any other individuals or entities the Receiver deems necessary to effectuate or implement the terms of the Court's orders, including revoking or granting adequate and sufficient powers of attorney to those individuals;

17.  to review information that falls under MSD's attorney-client privilege, attorney work product protection, or any other privilege or protection from disclosure to the extent the Receiver deems necessary to effectuate or implement the terms of the Court's orders;

18.  to direct officers, directors, employees, attorneys, advisors, agents, or other representatives of MSD to take or refrain from taking any actions;

Case 1:25-cv-06703-JSR   Document 226   Filed 04/24/26   Page 4 of 10

19. to communicate with MSD's officers, directors, employees, agents, partners, suppliers, or any other person affiliated with MSD;

20. to unwind any of MSD's asset transfers made after the entry of the Court's asset freeze order, ECF No. 95, to any entity or individual related to MSD, including Manuel Arroyo, Media Deportes Mexico, S. de R.L. de C.V., Grupo Lauman Holding, S. de R.L. de C.V., Altener S.A. de C.V., Comtelsat, S.A. de C.V., Fox Sports Mexico, and any other MSD affiliate, as well as any directors, officers, employees, friends, or relatives of the same;

21. to determine which entities and individuals are related to MSD;

22. to cause MSD to raise funds to replenish any assets transferred after the entry of the Court's asset freeze order, ECF No. 95;

23. to cause MSD to liquidate assets or otherwise generate funds sufficient to pay the contempt sanction imposed by the Court, including from the sale of assets, the assignment of proceeds from contracts, or by any other lawful means;

24. to cause MSD to pay Plaintiffs the monies owed pursuant to the Court's orders, including by holding all MSD assets and payment obligations in trust for Plaintiffs;

25. to direct any financial intermediary or any other entity holding any assets in MSD's possession, custody, or control to transfer the same to Plaintiffs;

26. to take steps to reach any assets in MSD's possession, custody, or control in the United States, Mexico, or any other foreign country;

27. to file documents with United States, Mexican, or other foreign regulators on MSD's behalf;

4

28.　to engage with United States, Mexican, or other foreign government agencies on MSD's behalf to assist with effectuating or implementing the Court's orders;

29.　to comply with all outstanding and future subpoenas in this case on MSD's behalf;

30.　to identify all asset transfers made by MSD after the asset freeze order, including the dates, amounts, recipients, purported bases for those transfers—and produce documents to Plaintiffs that reflect that information;

31.　to communicate on MSD's behalf with Plaintiffs' counsel to gather information needed to bring MSD into compliance with the Court's orders; and it is further

ORDERED that the Receiver may at his or her discretion, solely for the purpose of causing MSD to comply with the Court's orders, seek to liquidate, encumber, or impair any assets of MSD, and, if he takes such action, the Receiver shall promptly return to MSD any amounts obtained thereby that are greater than necessary to comply with the Court's orders; and it is further

ORDERED that the Receiver shall cause MSD and, to the extent it is within MSD's power to control its joint venture Fox Sports Mexico, to cause Fox Sports Mexico to cease using any of the Fox Sports Trademarks and any of the U.S. Fox Sports marks, *see* ECF No. 29; and it is further

ORDERED that the Receiver shall cause MSD to petition the 42nd Court of the Superior Court of Mexico City to lift the injunction it imposed against Plaintiffs and their affiliates. Upon resolution of that petition, the Receiver shall cause MSD to withdraw from all legal actions and regulatory proceedings in Mexico related to the Fox Sports Trademarks or any other mark involving the word Fox; and it is further

ORDERED that the Receiver shall identify and report to Plaintiffs and the Court all asset transfers made by MSD after the Court's asset freeze order, ECF No. 95, including the dates, amounts, recipients, and purported bases for those transfers—and produce documents to Plaintiffs that reflect that information; and it is further

ORDERED that the Receiver shall identify and report to Plaintiffs and the Court the names of the individuals who authorized MSD to make asset transfers after the Court's asset freeze order, ECF No. 95—and produce documents to Plaintiffs that reflect how those individuals authorized those transfers; and it is further

ORDERED that the Receiver shall take appropriate steps within each foreign (U.S. states or countries) jurisdiction necessary to effectuate the Court's orders. Likewise, the Receiver shall seek legal counsel on MSD's behalf, including to ensure compliance with foreign laws, when appropriate; and it is further

ORDERED that, to the extent MSD's approval or consent is required under applicable law in order for the Receiver to exercise any powers or rights attendant to exercising control over MSD, its assets, or its voting rights, MSD shall by virtue of this Order be deemed to have provided such consent or approval, and shall take all necessary actions to ensure that any of its affiliates or joint ventures take the necessary actions to ensure MSD's compliance with this Order, and all third parties shall be entitled to rely upon this Order as evidence of such consent or approval; and it is further

ORDERED that the Receiver shall have the power to employ counsel or any other professionals of the Receiver's choosing on MSD's behalf subject to notice to MSD and approval by this Court, with fees and expenses payable by MSD, and that in addition to any other counsel, the Receiver may retain counsel experienced with the commercial and intellectual

property law of Mexico, whose appointment shall be subject to notice to MSD and approval by

the Court; and that the Receiver shall be permitted to authorize counsel to act in the Receiver's or

MSD's name and stead in carrying out the duties of the receivership and in transmitting the

Receiver's directives and consent; and it is further

ORDERED that the Receiver and his or her professionals shall keep accurate

contemporaneous time records and be paid on an hourly basis at a reasonable and customary rate

for such work to be approved by the Court. However, the Receiver may negotiate other terms of

payment to be approved by the Court. All professionals retained by the Receiver shall submit

invoices to the Receiver, which shall be submitted to the Court by the Receiver along with any

other expenses. The Receiver shall submit invoices on the first of every month following the

Receiver's appointment. The Court will review the invoices for approval and may direct the

Receiver to provide additional information if the Court deems it necessary. All invoices

approved by the Court shall be paid within 30 days from any of MSD's assets that the Receiver

is able to identify and exercise control over. In the event that MSD lacks sufficient assets to pay,

then Plaintiffs shall pay the Receiver's Court-approved invoices within 60 days of receiving a

request for payment from the Receiver. Plaintiffs may move the Court to discharge the Receiver

60 days after the Receiver's appointment; and it is further

ORDERED that MSD, its respective agents, servants, employees, officers and directors,

and all those claiming under or through it, shall comply with the directives of the Receiver, and

shall not in any way disturb or interfere with the Receiver's performance of his or her duties

under this Order; and it is further

ORDERED that all actions of the Receiver pursuant to this Order shall be presumed to

have been made on an informed basis, in good faith, and in the honest belief that such actions

7

were taken appropriately to ensure MSD's compliance with this Court's orders. The Receiver, and anyone acting on his or her behalf, shall have no liability to MSD, its stockholders, or any other person or entity, for any actions taken in good faith pursuant to this Order. The Receiver shall be entitled to all protections, limitations from liability, and immunity available at law or in equity to a court-appointed Receiver, to the fullest extent permitted by applicable law. Expenses, including reasonable attorney's fees, incurred by the Receiver in defending any civil, criminal, administrative, or investigative act, suit, or proceeding, arising by reason of, or in connection with the Receiver's designation as Receiver for MSD, or in the performance of his or her duties hereunder, shall be paid by MSD in advance of the final disposition of such action, suit, or proceeding, subject to the repayment of such amount if it shall ultimately be determined by this Court that the Receiver is not permitted to be indemnified by MSD under applicable New York law; and it is further

ORDERED that any disputes relating to the Receiver or any actions taken by the Receiver on behalf of MSD or otherwise pursuant to this Order shall be filed in this Court; and it is further

ORDERED that the Receiver shall make quarterly written reports to Plaintiffs and the Court detailing the status of the execution of the Court's charge, including updates on MSD's assets, including an inventory of same, the Receiver's efforts to bring MSD into compliance with the Court's orders, and the Receiver's fees and administrative expenses, beginning 30 days from the date of the entry of this Order.

The Court imposes the following additional sanctions against MSD:

MSD, under the direction of the Receiver, is HEREBY ORDERED to produce to Plaintiffs, no later than May 15, 2026, monthly statements from any account holding assets in

8

MSD's possession, custody, or control for the period September 2025 to present—and continue to produce that information on the 1st of every month until MSD complies with all orders of the Court; and it is further

ORDERED that MSD, under the direction of the Receiver, provide, no later than May 15, 2026, written responses to Plaintiffs describing the basis for every transfer made after the Court's asset freeze order, ECF No. 95, including the identity of the individual or entity to whom the transfer was made, the contact person at the entity to whom the transfer was made, the amount and purpose of the transfer, the individuals at MSD responsible for authorizing and facilitating the transfer, and their contact information; and it is further

ORDERED that MSD, under the direction of the Receiver, produce to Plaintiffs, no later than May 15, 2026, any agreement, invoice, communication, or other documentation relating to any transfer made by MSD after the Court's asset freeze order, ECF No. 95; and it is further

ORDERED that MSD, under the direction of the Receiver, produce to Plaintiffs, no later than May 15, 2026, all contracts and other agreements that obligate any party or non-party to this action to pay MSD, as well as to provide Plaintiffs with a description of all amounts owed under those agreements, the bank account to which any party or non-party sends payments to MSD, the frequency with which payments to MSD are to be made, the dates when such payments are anticipated to end, the contact information for any entity obligated to pay MSD and MSD's point of contact for that entity, including the city, state, and country where that entity and its point of contact are located; and it is further

ORDERED that MSD, under the direction of the Receiver, comply by May 15, 2026 with any other outstanding discovery requests made by Plaintiffs.

9

**IT IS SO ORDERED.**

By the Court:

_____4/24/26_____            _____
Dated                             United/States District Judge

10

# Robert W. Seiden

Court-Appointed Receiver Pursuant to Order of The Honorable Judge Jed S. Rakoff of the U.S District Court for the Southern District of New York, in the matter titled, *Fox Corporation, et al., v. Media Deportes Mexico, S. de R.L. de C.V.*, No. 25-CV-6703-JSR (S.D.N.Y)

May 4, 2026

**VIA FEDEX**

Angela E. Noble
Clerk of Court
Office of the Clerk
400 North Miami Avenue
Miami, Florida 33128

> **Re: Notice of Filing Miscellaneous Action for Registration of Appointment of Receiver in the matter titled, *Fox Corporation, et al., v. Media Deportes Mexico, S. de R.L. de C.V.*, Case No. 1:25-cv-06703-JSR (S.D.N.Y.)**

Dear Ms. Noble:

I write as the Court-Appointed Receiver (the "Receiver") of Mexico Sports Distribution, LLC ("MSD") in *Fox Corporation et al. v. Media Deportes Mexico, S. de R.L. de C.V.*, Case No. 1:25-cv-06703 (S.D.N.Y.). Pursuant to the Receivership Order, the Receiver has assumed full authority over MSD, including control of its business operations, records, and other rights.

As reflected in the record, MSD maintains its principal place of business in Coral Gables, Florida. Accordingly, pursuant to 28 U.S.C. § 754, the Receiver is filing a Notice of Miscellaneous Action for the Registration of Appointment of Receiver in the U.S. District Court for the Southern District of Florida. I respectfully request that the Clerk's office promptly file the following documents enclosed hereto: (1) Notice of Appointment of Receiver; (2) Exhibit A – the Complaint; (3) Exhibit B – Temporary Injunction and Preliminary Injunction Orders; (3) Exhibit C – Order Finding MSD in Civil Contempt; and (4) Order Appointing Receiver. A cashier's check for the filing fee is also enclosed.

The Receiver is in the process of hiring local counsel in Florida, who, once approved in the underlying matter, will promptly appear in this matter in Florida on the Receiver's behalf. We kindly request that the Clerk's office confirm receipt of this package and notify the Receiver of the filing at the earliest opportunity.

Respectfully Submitted,

By: _____
Robert W. Seiden
322 Eighth Avenue, Suite 1200
New York, New York 10001
rseiden@seidenlaw.com
(212) 523-0686

cc: Enclosures.

1

